1

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                         EASTERN DISTRICT OF CALIFORNIA

11

12   DAVID DOKES,                              No.  2:15-cv-01157-TLN-DB

13                  Plaintiff,

14        v.                                   **ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY JUDGMENT**
15   SAFEWAY, INC.,

16                  Defendant.

17

18        This matter is before the Court on the motion for summary judgment, or alternatively

19   partial summary judgment, by Defendant Safeway, Inc., a Delaware corporation ("Defendant"),

20   which argues there is no genuine dispute as to material facts of the essential elements of each of

21   Plaintiff David Dokes's ("Plaintiff") claims for relief, and as a matter of law, judgment should be

22   entered for Defendant.  (ECF No. 11.)  Plaintiff filed an opposition to Defendant's motion.[1]  (ECF

23   No. 25.)  Defendant filed a reply.  (ECF No. 23.)  The Court has carefully considered the

24   arguments raised by the parties.  For the reasons set forth below, the Court hereby GRANTS

25   Defendant's motion for summary judgment.  (ECF No. 11.)

26   _____

     [1]      The Court accepted Plaintiff's Amended Opposition (ECF No. 25) as timely because it did not make any
27   substantive changes to Plaintiff's previously filed Opposition (ECF No. 22), and thus the Court subsequently
     precluded Defendant from filing a new reply because no new arguments were made within the Amended Opposition.
28   (Min. Order, ECF No. 24.)

                                                   1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed.[2]  Plaintiff Dokes, a member of United Food and Commercial Workers Union Local 8 (hereinafter "UFCW Local 8"), was employed by Defendant Safeway as the backup night crew manager in Safeway Store Number 1895-12 in Fair Oaks, California (hereinafter "the subject store").  (ECF No. 12 ¶¶ 1, 13.)

On June 29, 2014, then-employee Kevin Fairchild (hereinafter "Fairchild") was working after his normal shift had ended and was working under Plaintiff's supervision in the subject store.  (ECF No. 12 ¶ 2.)  At approximately 3:00 a.m., Fairchild gave a case of beer in the subject store to an individual named Fernando, who was known to both Plaintiff and Fairchild.  (ECF No. 12 ¶¶ 3, 5.)  Fairchild took twenty dollars from Fernando and made change at the register, but did not charge Fernando for the case of beer.  (ECF No. 12 ¶ 4.)  Plaintiff observed Fairchild giving Fernando the case of beer, observed Fernando leaving the subject store with the beer without Fernando having paid for it, and Plaintiff did not intervene.  (ECF No. 12 ¶¶ 6, 19.)  Plaintiff's actions in allowing Fernando to obtain a case of beer after hours without paying for it was a violation of both store policy and state law.  (ECF No. 12 ¶ 7.)

Safeway Loss Prevention Manager Tyler Patrick prepared a report of the incident and emailed it to Safeway District Manager John Cain.  (ECF No. 12 ¶ 9.)   After reviewing the report that Patrick prepared, Cain concluded that both Plaintiff and Fairchild committed and/or participated in violations of store policy, including employee theft and illegal sale of alcohol, and that both Fairchild and Plaintiff had not been truthful about the incident.  (ECF No. 12 ¶ 9.)  As a result, Cain made the decision to terminate the employment of both Plaintiff and Fairchild.  (ECF No. 12 ¶ 10.)  At the time that Cain made the decision to terminate both Plaintiff's and Fairchild's

---

[2]    Defendant filed a statement of undisputed material facts in support of its motion for summary judgment. (ECF No. 12.)  Plaintiff, who is represented by counsel, did not file a "concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication" and/or did not "reproduce the itemized facts in the [Defendant's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed."  E.D. Cal. L.R. 260(b).  Since Plaintiff did not file a response to Defendant's statement of facts, "the court may . . . consider the fact [identified by the movant] undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2)–(3); *see also* Pretrial Scheduling Order, ECF No. 8 at 5:1–5.

employment, Cain had no knowledge of either employee's race and had no information or reason to believe that Plaintiff had been forced to participate in illegal activity. (ECF No. 12 ¶¶ 11–12.)

Plaintiff's union contract, which was between UFCW Local 8 and Defendant, was in effect when Plaintiff's employment was terminated in July 2014. (ECF No. 12 ¶ 14.) Under the union contract, the employer had the right to discharge any employee for just cause and if the discharged employee believed that he or she had been unjustly discharged, the employee had the right to appeal to the employer through the union within ten days of termination. (ECF No. 12 ¶¶ 14, 16.) Cain based his decision to terminate Plaintiff on just cause for purposes of the union contract. (ECF No. 12 ¶ 15.) Plaintiff filed a grievance through his union concerning his termination. (ECF No. 12 ¶ 17.) After reviewing the videotape of the incident, the union "informed Plaintiff that there was nothing that they could do because [from the] videotape . . . , it appeared to the union representative that [P]laintiff knew Fernando very well." (ECF No. 12 ¶ 18.)

On April 16, 2015, Plaintiff filed a complaint against Defendant in the Superior Court of the State of California, for the County of Sacramento, Case No. 34-2015-00178015. (ECF No. 1, Ex. A.) On May 22, 2015, Defendant filed a Notice of Removal to this Court based on federal question jurisdiction and supplemental jurisdiction, (ECF No. 1), and filed an Answer to Plaintiff's Complaint, (ECF No. 4). In his Complaint, Plaintiff alleges the following nine causes of action: (1) tortious discharge from employment in violation of public policy; (2) race discrimination violation under California Government Code § 12900 (contained within the California Fair Employment and Housing Act (hereinafter "FEHA")); (3) whistleblower retaliation under California Labor Code § 1102.5(c); (4) retaliation violation under FEHA, California Government Code § 12940(h); (5) failure to prevent retaliation violation under FEHA, California Government Code § 12940(k); (6) breach of implied contract of continued employment; (7) breach of covenant of good faith and fair dealing; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. (ECF No. 1, Ex. A.) In response, Defendant filed an answer, denying Plaintiff's allegations and asserting nineteen affirmative defenses. (ECF No. 4.)

1    Defendant seeks summary judgment sub judice based on the pleadings, arguing that all

2    nine of Plaintiff's causes of action lack a genuine dispute as to material facts, or in the alterative

3    partial summary judgment for the causes of action this Court deems lack a genuine dispute as to

4    material facts.  (ECF No. 11.)  Plaintiff filed an opposition to Defendant's motion for summary

5    judgment (ECF No. 25), and Defendant filed a reply to Plaintiff's opposition (ECF No. 23).

6    **II.    STANDARD OF LAW**

7        Summary judgment is appropriate when "the movant shows that there is no genuine

8    dispute as to any material fact and the movant is [therefore] entitled to judgment as a matter of

9    law." Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), *superseded

10    on other grounds*.  "[The] party seeking summary judgment always bears the initial responsibility

11    of informing the district court of the basis for its motion, and identifying those portions of the

12    pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

13    if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex

14    Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).  "[W]here the

15    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment

16    motion may properly be made in reliance solely on the pleadings, depositions, answers to

17    interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted).  Indeed,

18    summary judgment should be entered against a party who does not make a showing sufficient to

19    establish the existence of an element essential to that party's case, and on which that party will

20    bear the burden of proof at trial.

21        If the moving party meets its initial responsibility, the burden then shifts to the opposing

22    party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.

23    Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v.

24    Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this

25    factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required

26    to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

27    in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c).  In proving that the

28    disputed fact is material, the opposing party must demonstrate the disputed fact "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). In proving that the dispute is genuine, the opposing party must demonstrate "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 289. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory Committee Note to 1963 Amendment).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255 (citing *Adickes*, 398 U.S. at 158–59). Nevertheless, it is the opposing party's obligation to produce a factual predicate from which inferences may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation omitted).

### III.   ANALYSIS

Defendant moves for summary judgment on Plaintiff's following nine causes of actions: (1) tortious discharge from employment in violation of public policy; (2) race discrimination violation under California Government Code § 12900 (contained within the California Fair

Employment and Housing Act (hereinafter "FEHA")); (3) whistleblower retaliation under California Labor Code § 1102.5(c); (4) retaliation violation under FEHA, California Government Code § 12940(h); (5) failure to prevent retaliation violation under FEHA, California Government Code § 12940(k); (6) breach of implied contract of continued employment; (7) breach of covenant of good faith and fair dealing; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. As an underlying issue to the subsequent causes of action, the Court first addresses Plaintiff's race discrimination cause of action. Similarly, retaliation is an underlying issue to Plaintiff's first and third causes of actions, and thus, follows the Court's discussion of the fourth and fifth causes of action on retaliation.

## A. Second Cause of Action: Race Discrimination

Defendant seeks summary judgment on Plaintiff's second cause of action, which alleges race discrimination in violation of FEHA. (ECF No. 1, Ex. A ¶¶ 16–20.) Defendant argues Plaintiff makes only conclusory, boilerplate allegations, and does not demonstrate that Plaintiff's alleged protected characteristics factored into Defendant's decision to terminate Plaintiff's employment. (ECF No. 11 at 18:16–21:7.)

FEHA prohibits an employer from "discharg[ing] . . . from employment or . . . discriminat[ing] against [an employee] in terms, conditions, or privilege of employment" "because of race, . . . color, national origin, [or] ancestry . . . ." Cal. Gov't Code § 12940(a). In evaluating discrimination claims under FEHA, California courts look to federal precedent governing analogous federal discrimination laws. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [its] own statutes.") (citations omitted).

To analyze disparate treatment claims, the United States Supreme Court in *McDonnell Douglas Corp. v. Green* established a tripartite burden-shifting framework. 411 U.S. 792, 802–04 (1973); *see also Guz*, 24 Cal. 4th at 354 ("adopt[ing] the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment[, which is known as the] *McDonnell Douglas* test"). Under the

6

*McDonnell Douglas* test, the plaintiff has the initial burden of establishing by a preponderance of evidence a prima facie case of discrimination. *Guz*, 24 Cal. 4th at 354. Once a prima facie case is shown, a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* at 355–56. Stating a legitimate, nondiscriminatory reason negates the presumption of discrimination and shifts the burden back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination. *Id.* at 356.

To show a prima facie case of race discrimination under FEHA, a plaintiff must show: (i) he was a member of a protected class; (ii) he was performing competently in the position he held; (iii) he suffered an adverse employment action; and (iv) the employer acted with a discriminatory motive. *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011) (citing *Guz*, 24 Cal. 4th at 355); *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013). A plaintiff can demonstrate discriminatory motive by showing "other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 800 (N.D. Cal. 2015) (citing *Slatkin v. Univ. of Redlands*, 88 Cal. App. 4th 1147, 1158 (2001)). A plaintiff also "must prove by a preponderance of the evidence that there was a 'causal connection' between [his] protected status and the adverse employment decision." *Mixon v. Fair Emp't & Hous. Comm'n*, 192 Cal. App. 3d 1306, 1319 (1987).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999)). "Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.* (alterations in original) (quoting *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247 (2008)). If the employer meets its burden, the plaintiff-employee must demonstrate either "that the defendant's showing was in fact insufficient or . . .

that there was a triable issue of fact material to the defendant's showing." *Id.* at 746 (alterations in original) (quoting *Hanson*, 74 Cal. App. 4th at 225 (1999)); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917–918 (9th Cir. 1997) ("[t]o . . . survive summary judgment, [plaintiff] must produce enough evidence to allow a reasonable factfinder to conclude *either*: (a) that the alleged reason for [plaintiff's] discharge was false, *or* (b) that the true reason for his discharge was a discriminatory one") (emphasis in original) (citation omitted).

### i. *Legitimate, Nondiscriminatory Reason*

To demonstrate a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment, Defendant "must show that the procedure by which [his employment] was terminated was validly and fairly devised and administered to serve a legitimate business purpose." *Lucent Techs.*, 642 F.3d at 745–46 (quoting *Hanson*, 74 Cal. App. 4th at 223). "A reason is 'legitimate' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.'" *Reid v. Google, Inc.*, 50 Cal. 4th 512, 520 n.2 (2010) (emphasis omitted) (citing *Guz*, 24 Cal. 4th at 356).

In moving for summary judgment Defendant argues that "Plaintiff . . . cannot establish a *prima facie* case of racial discrimination on this record" and Defendant had a "legitimate non-discriminatory basis for [Plaintiff's employment] termination." (ECF No. 11 at 19:1–2, 21:10.) Specifically, Defendant argues that Plaintiff fails to establish the fourth element of a FEHA *prima facie* case that the employer acted with a discriminatory motive: "[P]laintiff alleges nothing more than that he is an African-American and his supervisors are not . . . . [P]laintiff cannot show discrimination in the foundational sense that he was treated differently from similarly situated employees who are not African-American." (ECF No. 11 at 19:2–3, 19:9–11) (citation omitted). In support, Defendant provides:

> Kevin Fairchild, who is white, was terminated by Cain along with [P]laintiff for the same activity. Indeed, [P]laintiff, as Fairchild's supervisor, bears greater responsibility since he was in a position of authority, and could have halted the improper transaction, but did nothing. There is thus no evidence of differential treatment on the basis of race on this record: white and black employees were both terminated for the same conduct. Significantly, District Manager Cain, the decision maker, did not know the race of either [P]laintiff or Fairchild when he made the decision to terminate them. DSE,

8

Exh. D, ¶6.[]

(ECF No. 11 at 19:12–19) (footnote omitted).  Defendant further argues that Defendant had a

legitimate, non-discriminatory basis for terminating Plaintiff's employment:

> District Manager Cain based his decision to terminate [P]laintiff's employment on three reasons: (1) that [P]laintiff had either engaged in or acquiesced in employee theft[,] (2) that he had either engaged in or acquiesced in a violation of state law and company policy prohibiting the after[-]hours sale of alcohol[, and] (3) that he had been untruthful in the investigation.  DSE, Exh. D, ¶5(a)–(d); ¶7 . . . .

> . . . .

> . . . District Manager Cain terminated [P]laintiff's employment on the basis of the report he received from Loss Prevention Investigator Patrick, which showed at least three grounds for terminating [P]laintiff—[P]laintiff's participation or at least acquiescence in employee theft; the illegal sale of alcohol; and employee dishonesty in the course of an investigation.  Those are legitimate reasons as a matter of law.  *See* Garcia v. Amerisource Bergen, 2011 WL 2038552 at *9 (employee theft legitimate non-discriminatory reason for termination); *McGrory* [v. Applied Signal Tech., Inc.], 212 Cal. App. 4th [1510,] 1527–1528 [(2013)]; *Joaquin* [v. City of L.A.], 202 Cal. App. 4th [1207,] 1226 [(2012)] (untruthfulness in an investigation is good cause for termination).

> . . . .

> . . . Cain was not aware of either [P]laintiff's or Fairchild's race when he terminated them . . . . [P]laintiff testified that he knew of no reason to believe that he was under investigation because of his race.  DSE, Exh A(l) at 94:19–95:2.  At his deposition, when asked for the basis for his belief, he stated "It's the way—the way it pretty much went down.  It just felt like there was other reasons besides, you know, other motivation fueled by that."  *Id.* at 93:15–20.  Plaintiff's combination of speculation and hearsay is insufficient to raise a triable issue of fact as to whether Safeway was motivated to terminate him because of his race.  *See Hersant v. Department of Social Services*, (1997) 57 Cal. App. 4th 997, 1009.

(ECF No. 11 at 16:13–17, 21:13–20, 21:26–22:7.)

Defendant provides, and Plaintiff does not object to, the following store policy and state

law that were in effect at the time of Plaintiff's employment termination:

> Under Safeway store policy in force in July of 2014, "failure to ring up purchases, removing Company property from the premises and borrowing money from the cash register . . . shall be classified as theft."  DSE, Exh. A(6); A(l) at 101:3–103:9.  Theft of company property "shall be cause for discharge."  Employees "who give assistance to other employees or persons in a theft shall also be

discharged." In addition, any employee who "aids and/or abets another employee and/or other people in the misappropriation of Company property will be subject to immediate discharge." *Id.* Misappropriation of Company property "shall include unauthorized . . . removal and/or use of Company merchandise . . . and shall be grounds for immediate discharge." *Id.*

California Business and Professions Code section 25631 provides that any agent or employee of a business holding a license to sell liquor "who sells, gives, or delivers to any persons any alcoholic beverage or any person who knowingly purchases any alcoholic beverage between the hours of 2 o'clock a.m. and 6 o'clock a.m. of the same day, is guilty of a misdemeanor." Cal. Bus. & Prof. Code § 23404 makes it unlawful for "any salesman to aid or abet in the violation of any of the provisions of this division or knowingly to become a party, either directly or indirectly, in the violation of any of the provisions of this division."

(ECF No. 11 at 8:5–21.) The facts taken as undisputed, *see supra* note 2, provide: "On June 29, 2014, at approximately 3:00 a.m., Kevin Fairchild gave a case of beer to an individual named Fernando in store 1895-12. [DSE, Exh. A(2) 26:22–30:12; Exh. B, ¶¶10, 12, 14; Exh. B(l) passim] . . . . Plaintiff observed Fairchild giving Fernando the case of beer without Fernando having paid for it, but did not intervene. [DSE, Exh. A(1) 69:1–70:21; 73:21–74:14; Exh. B, ¶¶10, 14; Exh. B(l) passim.] . . . . Plaintiff's actions in allowing Fernando to obtain a case of beer after hours without paying for it was a violation of both store policy and state law. [DSE, Exh. A(l) 68:20–25; Exh. A(6); Exh. D, ¶5; Exh. C, ¶4; Cal. Bus and Professions Code §§25631; 23404.]." (ECF No. 12 ¶¶ 3, 6–7) (brackets in original).

The record supports no genuine dispute as to the material fact that Plaintiff violated store policy and state law because Plaintiff's "observ[ation of] Fairchild giving Fernando the case of beer without Fernando having paid for it [and] not interven[ing]," (*Id.*), constitute "fail[ing] to ring up [the] purchase[ of the case of beer,]" which is "classified as theft" and clearly a "cause for discharge," (ECF No. 11 at 8:5–8). Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See Dumas v. New United Motor Mfg., Inc.*, 305 Fed. Appx. 445, 448 (9th Cir. 2008) (unpublished) (finding Defendant "proffered a legitimate, non-discriminatory reason for terminating [Plaintiff]—his violation of company policy"); *Crews v. Trustees of Columbia Univ.*, 452 F. Supp. 2d 504, 523 (S.D.N.Y. 2006) (finding that theft is a legitimate, non-discriminatory reason to discharge an employee). An employer "may decide that

10

participation in a theft . . . may render an employee unqualifi[ed] for employment, [as long as] this criterion [is] applied, alike to members of all races." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 (1976) (citation omitted) (internal quotations omitted). Furthermore, Defendant demonstrated that District Manager Cain terminated the employment of both Fairchild, who is Caucasian, and Plaintiff, who is African-American, without any knowledge of their race at the time of termination.[3] Thus, Defendant has proffered a legitimate, non-discriminatory reason for terminating Plaintiff's employment, and the burden shifts to Plaintiff to establish pretext.

### ii. *Pretext for Discrimination*

Once the employer has proffered a legitimate reason for the discharge, the burden shifts to the plaintiff to raise a genuine issue of material fact as to whether this reason was a pretext for discrimination. The Ninth Circuit explains how Plaintiff can show the requisite pretext:

> [A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. These two approaches are not exclusive; a combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment improper.

*Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998)). "To establish that a defendant's nondiscriminatory explanation is a pretext for discrimination [by] rely[ing] on circumstantial evidence, [Plaintiff must provide evidence that is] 'specific' and 'substantial' to create a genuine issue of material fact." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006) (quoting *Godwin*, 150 F.3d at 1222 ("Such [circumstantial] evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [race].")). A plaintiff may evince "[d]isparate treatment [has] occur[red by showing] plaintiff [wa]s singled out on account of [his]

---

[3] The facts taken as undisputed, *see supra* note 2, provide: "On the basis of his belief that both [P]laintiff and Fairchild had violated store policy by engaging in or participating in employee theft, illegal sales of alcohol, and untruthfulness, Cain made the decision to terminate them both. [DSE, Exh. D, ¶6.] . . . . At the time that he made the decision to terminate [P]laintiff and Fairchild, Cain did not know the race of either employee. [DSE, Exh. D, ¶6.]" (ECF No. 12 ¶¶ 10–11.)

race . . . and [wa]s treated less favorably than others similarly situated." *Leland v. City & Cty of S.F.*, 576 F. Supp. 2d 1079, 1091 (N.D. Cal. 2008) (citing *Cornwell*, 439 F.3d at 1028); *see also Solano v. Regents of Univ. of Cal.*, 2005 WL 1984473, *4 (E.D. Cal. 2005) ("To establish a prima facie case of race discrimination, plaintiff must prove . . . the employer treated similarly situated individuals who are not in her protected class more favorably" (footnote omitted)).

Here, Plaintiff argues: "Defendants' mistreatment of him, and ultimate termination, was at least partially motivated by racial animus [and] Plaintiff's race was a motivating factor for the adverse employment actions Defendant imposed against him" because "Plaintiff is an African American" and "all of the . . . named store employees, including his superiors, are white." (ECF No. 1, Ex. A ¶ 17.) Plaintiff concedes that he lacks direct evidence to prove pre-textual discrimination, stating that he "can bring substantial responsive evidence to show that his termination was pre-textual . . . [i]f Plaintiff is granted a bit more time, we may be able to find direct evidence." (ECF No. 25 at 11:1–2, 11:8–9.) However, Plaintiff offers the following as indirect evidence to support his argument that Defendant discriminated against him:

> [D]ue to political correctness and extensive sensitivity training, there is very little overt and explicit racism that can be offered as undeniable proof in this case. What we do have is a scenario where a white employee, Kevin Fairchild, is coming to work late, working off-the-clock, and receiving no discipline, even bragging to other co-workers that he was not being disciplined. *Id.* Ex. A, 57:23–60:23. Dovetailing with the history of lack of discipline of [Fairchild] by his superiors, we have the fact that Kevin Fairchild was even promoted to head clerk in the face of clear violations of store rules. *Id.* Ex. A, 59:9–13.
>
> . . . [W]hen Plaintiff reported [Fairchild]'s illegal acts to the assistant store managers, Rodney Youngster and Jael Uhl, they took no action whatsoever. Plaintiff reported [Fairchild]'s illegal act to his direct supervisor John Novitsky, who also took no action. According to Tyler Patrick's Declaration, a full ten days later, "On July 9, 2014 I received an email notification from Nate Reich, the store manager at Store 1895-12, informing me that the Meat Manager in his store reported to him that [Plaintiff] was telling other employees that Head Clerk Kevin Fairchild had sold alcohol to someone after 3:00 a.m." *Defendant's Supporting Evidence Re: Motion for Summary Judgment*, Ex. B, ¶4. This statement characterizes [Plaintiff] as the bad actor in the investigation, rather than [Fairchild].

(ECF No. 25 at 11:20–12:5.)

Plaintiff has failed to demonstrate that a reasonable juror could conclude Defendant's reasoning for discharge was false or that Defendant's discharge was motivated by discriminatory animus. To argue that Fairchild had prior misconduct where Defendant did not discipline him does not offer support for differential treatment between Caucasian and African-American employees regarding the legitimate, non-discriminatory reason that Defendant provided for terminating Plaintiff's employment. Plaintiff's allegations of a "history of lack of discipline of [Fairchild] by his superiors," (ECF No. 25 at 11:24), as an argument for disparate treatment between Caucasian and African-American employees fails to connect how Fairchild's actions are related to being Caucasian or to Plaintiff being terminated from his employment. In fact, Plaintiff does not proffer any evidence that other Caucasian employees were also not being disciplined for similar behavior, and does not adduce any evidence that Plaintiff and/or other African-American employees were disciplined for similar behavior. Absent such evidence, Plaintiff has evinced no connection between his race and his employment termination to "give rise to an inference of [racial] discrimination." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017) (citations omitted).

Assuming arguendo, Plaintiff's argument might carry weight if Fairchild had not been terminated following the after-hours alcohol incident, while Plaintiff's employment was terminated. However, Fairchild and Plaintiff, the only two employees involved in the incident, were both terminated. This evinces that a similarly situated employee who was involved in the same incident as Plaintiff, but whom is outside of Plaintiff's protected class, was not treated more favorably, but rather was treated the same. Instead, Plaintiff's argument is a complaint about Kevin Fairchild's behavior, regardless of his race, which provides no basis that employer-Defendant treated the similarly situated individual, Fairchild, more favorably on account of him not being in a protected class. Plaintiff has not shown that he was "singled out and treated less favorably than others similarly situated on account of race." *Cornwell*, 439 F.3d at 1028 (citations omitted).

Furthermore, while Plaintiff concedes that District Manager Cain did not know the race of Plaintiff or Fairchild at the time he decided to terminate their employment, Plaintiff alleges that

13

Cain based his decision on the investigative report which was drafted by Tyler Patrick, who had knowledge of their races. Yet, this argument lacks any specificity as to how Patrick's knowledge of Fairchild's and Plaintiff's respective races led to or had any underlying impact on Cain's decision to terminate their employment. Plaintiff has adduced no evidence that causally links his termination to his protected status. Absent "specific and substantial" evidence of discriminatory pretense, Plaintiff does not meet his burden "to create a triable issue with respect to whether [Defendant] intended to discriminate on the basis of [race]." *Godwin*, 150 F.3d at 1222 (citations omitted).

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claim for discrimination based on race.

### B. Fourth and Fifth Causes of Action: Retaliation

#### i. *Cause of Action Four: Retaliation in Violation of FEHA*

Defendant seeks summary judgment on Plaintiff's fourth cause of action, which alleges that Defendant, in violation of FEHA, retaliated against Plaintiff for reporting his fellow employee's misconduct. (ECF No. 1, Ex. A ¶¶ 30–31.) Defendant argues that Plaintiff's allegations are "insufficient to support a claim of retaliation under FEHA [because i]n the absence of any evidence that [P]laintiff was terminated because he opposed practices forbidden under the FEHA, his FEHA based retaliation claim fails as a matter of law." (ECF No. 11 at 22:14, 22:19–21) (citation omitted).

FEHA prohibits an employer from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any [employee] because the [employee] has opposed any practices forbidden under [FEHA, including race discrimination,] or because the [employee] has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h). In determining FEHA retaliation claims in the context of motions for summary judgment, California courts apply the same burden-shifting analysis, *supra* Part III(A), as for determining discrimination claims under FEHA. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing *McDonnell Douglas*, 411 U.S. at 802–805). To establish a prima facie case of retaliation, a plaintiff must "establish . . . that: 1) he engaged in a protected activity; 2) he

14

suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002); *see also Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 287 (2009). Once the prima facie case is established:

> [t]he burden of production then shifts to the defendant-employer to articulate a legitimate, non-retaliatory explanation for the adverse employment action. If the employer successfully rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's proffered explanation is merely a pretext for impermissible retaliation.

*Vallimont v. Chevron Energy Tech. Co.*, 434 Fed. App'x 597, 599–600 (9th Cir. 2011) (unpublished) (quoting *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n.4 (9th Cir. 1989) (citations omitted)). However, when an employer moves for summary judgment, "the burden is reversed" and the defendant-employer "bears the initial burden . . . to show either that (1) plaintiff[-employee] could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff[-employee]'s employment." *Lucent Techs.*, 642 F.3d at 745 (citations omitted). If the employer meets its burden, the plaintiff-employee must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Id.* at 746 (alterations in original) (citations omitted).

### a.  Protected Activity

Under a FEHA retaliation claim, "protected activity" includes an employee's formal or informal complaint to a supervisor regarding unlawful discrimination, and accordingly, an employer's adverse actions taken against the employee after such complaints may constitute retaliation. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (citing *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994) (allowing retaliation claim based on informal protest of allegedly discriminatory policy)). However, "complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." *Yanowitz*, 36 Cal. 4th at 1047. The employee must "have alerted his employer to his belief that discrimination, not

merely unfair personal treatment, had occurred." *Mayfield v. Sara Lee Corp.*, 2005 WL 88965, *8 (N.D. Cal. 2005) (citing *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987) (finding employee complaint regarding scheduling change not protected activity)); *see also Lanagan v. Santa Cruz Cty Metro Transit Dist.*, 2010 WL 1838984, at *5–6 (N.D. Cal. 2010) (reporting co-employee's negligence resulting in accidents was "not protected activity [under FEHA] because it has nothing to do with the FEHA's prohibitions"); *Lewis v. City of Fresno*, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) (complaining of allocation of overtime assignments in an email or informal grievance to superior was not a protected activity under FEHA). "As a threshold matter, . . . an employee's conduct may constitute protected activity for purposes of the antiretaliation provision of the FEHA not only when the employee opposes conduct that ultimately is determined to be unlawfully discriminatory under the FEHA, but also when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA." *Yanowitz*, 36 Cal. 4th at 1043.

Defendant argues that Plaintiff did not engage in protected activity to establish the first element of a FEHA retaliation claim: "Plaintiff alleges only that he was retaliated against for reporting an unlawful sale of alcohol, which is not a 'practice forbidden' *under the FEHA*, which governs employment discrimination." (ECF No. 11 at 22:16–18) (emphasis in original) (citation omitted). Defendant contends further, "[i]n the absence of any evidence that [P]laintiff was terminated because he opposed practices forbidden under the FEHA, his FEHA based retaliation claim fails as a matter of law." (ECF No. 11 at 22:19–21) (citations omitted). In support of its argument, Defendant argues:

> [T]here is no evidence that [Defendant] coerced [P]laintiff to engage in illegal activity: [P]laintiff himself concedes that he voluntarily[] "participated" in an illegal sale of alcohol in that he allowed his subordinate employee Fairchild to give the beer to the customer Fernando. DSE, Exh. A(l) 69:1–11 70:21. The record shows further that [P]laintiff was not pressured to "conceal" the transaction; on the contrary, as [P]laintiff himself testified, at least one Store Manager urged [P]laintiff to "say something." *Id.*, Exh. A(1) at 78:21–79:13.

(ECF No. 11 at 15:7–13) (footnotes omitted). Plaintiff argues that he engaged in protected

activity under FEHA:

> Plaintiff did engage in an activity that is worth protecting. Plaintiff reported to management that [Fairchild] violated state law in committing a theft of store property, and sold a customer beer after 2:00 a.m. in violation of state law. The public has an interest in protecting employees from termination for reporting the illegal acts of coworkers. In its motion, Defendant concedes that "the prohibition on after hours sales of alcohol constitutes a public policy sufficient to support a 'Tameny'[4] claim." *See Defendant's Memorandum in Support of its Motion for Summary Judgment,* page 8, footnote 4. Part one of this test is therefore met as there is no dispute from Defendant in this regard.

(ECF No. 25 at 9:13–19.) However, Plaintiff mischaracterizes Defendant's argument and the standard for determining retaliatory claims under FEHA. FEHA prohibits an employer from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any [employee] because the [employee] opposed any practices forbidden under [FEHA, including race discrimination] or . . . filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h). Plaintiff's argument that he was engaged in activity that is "worth protecting" is insufficient to establish he was engaged in "protected activity," as prescribed by FEHA, by reporting forbidden practices, namely discriminatory conduct. FEHA prohibits retaliatory action by the employer for the employee's reporting of discriminatory conduct based on sex, race, disability, or another discriminatory basis set forth by FEHA, section 12940(a). *See e.g., Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (finding that "[a]sserting one's civil rights, as [Plaintiff] did by complaining of [and reporting a co-worker]'s conduct [of sexually assaulting her at work] is a protected activity under . . . FEHA"). For there to be "a retaliation claim[, the] employee [must have] complained of or opposed conduct that the employee reasonably believe[d] to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." *Yanowitz,* 36 Cal. 4th at 1043 (citations omitted). However, Plaintiff has not adduced any evidence to support the argument that he reasonably believed Fairchild's conduct to be discriminatory at the time Plaintiff reported the incident to

---

[4] In the case of *Tameny v. Atlantic Richfield Co.,* 27 Cal. 3d 167 (1980), the California Supreme Court held that at-will employees may recover tort damages if they can demonstrate that they were discharged in violation of a fundamental public policy. These claims are commonly referred to as *Tameny* claims.

management. . In fact, the record does not support the contention that Plaintiff's reporting of any of Fairchild's prior misconduct related to racial discrimination at all. Defendant has demonstrated that Plaintiff cannot identify a "protected activity" as defined by FEHA. Thus, the burden shifts to Plaintiff.

### b. Pretext for Discrimination

Once the burden shifts, the plaintiff-employee must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Lucent Techs.*, 642 F.3d at 746 (alterations in original) (citation omitted). "To . . . survive summary judgment, [Plaintiff] must produce enough evidence to allow a reasonable factfinder to conclude *either*: (a) that the alleged reason for [Plaintiff's] discharge was false, *or* (b) that the true reason for his discharge was a discriminatory one." *Nidds*, 113 F.3d at 918 (emphasis in original) (footnote omitted) (citation omitted).

As discussed above, *supra* Part III(A)(ii), Plaintiff has failed to demonstrate that a reasonable juror could conclude Defendant's reason for discharging Plaintiff was motivated by discriminatory animus. To qualify as "protected activity" under a FEHA retaliation claim, the employee's complaint must relate to "unlawful discrimination." *See Yanowitz*, 36 Cal. 4th at 1046–47. Although courts have consistently recognized a wide range of activities that "qualify as engaged in protected opposing activity," the activity still "must oppose activity the employee reasonably believes constitutes unlawful discrimination." *Id.* at 1047 & n.7 (citing *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012–1014 (9th Cir. 1983) (writing letter to customer of employer complaining about inadequacies in employer's affirmative action program); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136–1137 (5th Cir. 1981) (boycotting and picketing of store); *Coleman v. Wayne State University*, 664 F. Supp. 1082, 1092 & n.5 (E.D. Mich. 1987) (stating repeatedly in public and private that the university engaged in discriminatory employment practices)). Without a discriminatory basis, there is no viable retaliatory claim under FEHA.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claim for retaliation.

18

1      ii.   *Cause of Action Five: Failure to Prevent Retaliation in Violation of*

2            *FEHA*

3      Defendant seeks summary judgment on Plaintiff's fifth cause of action, alleging

4  Defendant failed to prevent retaliatory action in violation of FEHA.  (ECF No. 1, Ex. A ¶¶ 38–

5  44.)  Defendant argues that it is entitled to summary judgment on the basis that Plaintiff's

6  allegations are "insufficient to support a claim of retaliation under FEHA [and i]n the absence of

7  an underlying violation of the FEHA, there is no viable 'failure to prevent' claim as a matter of

8  law."  (ECF No. 11 at 22:14, 23:1–3) (citations omitted).

9      FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to

10  prevent discrimination . . . from occurring."  Cal. Gov't Code § 12940(k).  Accordingly, a claim

11  of failure to prevent discriminatory retaliation requires a discriminatory act or animus.

12  "Employers should not be held liable to employees for failure to take necessary steps to prevent

13  such conduct, except where the actions took place and were not prevented."  *Trujillo v. N. Cty*

14  *Trans. Dist.*, 63 Cal. App. 4th 280, 289 (1998)).  In the absence of showing an actionable

15  discrimination claim, there can be no violation of Government Code § 12940(k).  *See Northrop*

16  *Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002).  The

17  Court has found no viable claim of discrimination, *see supra* Part III(A), or discriminatory

18  retaliation, *see supra* Part III(B)(i).  Therefore, there can be no independent cause of action for

19  failure to prevent discriminatory retaliation under FEHA.

20      Accordingly, the Court GRANTS Defendant's motion for summary judgment as to

21  Plaintiff's claim for failure to prevent retaliation.

22            C.   First and Third Causes of Action: Wrongful Termination

23      Defendant seeks summary judgment on Plaintiff's first and third causes of action, alleging

24  Defendant wrongfully terminated his employment in violation of California Labor Code and

25  public policy.[5]  Defendant argues, "Plaintiff cannot establish that he was retaliated against as a

26  matter of law under [this] cause of action [because] there is no evidence that [Defendant] coerced

27  [P]laintiff to engage in illegal activity . . . [n]or can [P]laintiff establish that he was terminated

28  ─────────────────
     [5]      Because the causes of action require identical analysis, the Court considers these claims in tandem.

because he reported the illegal sale of alcohol." (ECF No. 11 at 8:19–9:15.)  Plaintiff merely states: "The first four causes of action in Plaintiff's complaint . . . are all related and subject to a similar analysis." (ECF No. 25 at 8:28–93.)[6]  As discussed below, *infra* Part III(D) and note 7, Plaintiff's opposition to Defendant's motion for summary judgment does not address these causes of action.  However, Plaintiff alleges in his Complaint in his first cause of action, as follows:

> In July 2014, in violation of law and public policy, Defendant[] terminated Plaintiff's employment, because he exercised his legal right not to engage in illegal business activity (i.e. selling alcohol during prohibited hours and while the store was closed), or conceal the same, and to duly report it to his supervisors.

> . . . Defendant[] knew that firing Plaintiff for reporting, to them, the illegal activity of a colleague was unlawful. Notwithstanding this knowledge, Defendant[] despicably subjected Plaintiff to cruel and unjust treatment, including ultimate termination.  Defendant['s] conduct warrants the assessment of punitive damages.

(ECF No. 1, Ex. A ¶¶ 12–13.)  Further, Plaintiff alleges in his Complaint in his third cause of action that Defendant violated California Labor Code § 1102.5(c), as follows:

> It is fundamental public policy of that State of California that no employer retaliate against an employee who refuses to engage in an activity that would result in a violation of law, or refuses to conceal the illegal activity, as provided by California's Whistleblower statute, Labor Code § 1102.5(c) . . . . Plaintiff refused to engage in the active concealment of Fairchild's illegal alcohol sale, much more participate in it, and he reported the same to his various supervisors.

> . . . Defendant knowingly and intentionally retaliated against Plaintiff by terminating his employment.

(ECF No. 1, Ex. A ¶¶ 23–24.)  Without the benefit of Plaintiff's argument in opposition, the Court reads the complaint to allege Defendant violated public policy by retaliating against Plaintiff for informing .

To establish a claim for wrongful discharge in violation of public policy, the plaintiff must establish: "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App.

---

[6]  *See also, infra* Part III(D) and note 7, for a discussion concerning Plaintiff's failure to oppose this cause of action in his opposition to Defendant's motion for summary judgment.

4th 144, 154 (2014) (citation omitted).

As discussed, *supra* Part III(A) and (B), there is no viable claim for race discrimination or retaliation. Accordingly, Plaintiff's derivative claim for wrongful termination in violation of public policy based on retaliation fails. *See Tumblin v. USA Waste of California, Inc.*, 2016 WL 3922044, at *8 (C.D. Cal. 2016) (citing *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996); *Tribble v. Raytheon Co.*, 414 Fed. App'x. 98, 100 (9th Cir. 2011) ("The district court correctly concluded that Tribble's 'state law claim for wrongful termination of public policy fails for the same reasons as his retaliation claim fails.'").

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the wrongful termination claim.

### D. Sixth and Seventh Causes of Action: Contract-Based Claims Preempted

Defendant moves for summary judgment on Plaintiff's sixth and seventh causes of action, which allege breach of implied contract of continued employment and breach of covenant of good faith and fair dealing. (ECF No. 1, Ex. A ¶¶ 45–58.) Defendant contends that "on the[] face [of Plaintiff's allegations,] they require interpretation of the collective bargaining agreement in force between [Defendant] and the UFCW and are thus preempted by § 301 of the federal Labor Management Relations Act, 1947." (ECF No. 11 at 23:7–11.)[7] Plaintiff's opposition to Defendant's motion for summary judgment does not address these causes of action.[8] Both causes

---

[7]     Defendant removed this action from the Superior Court of the State of California, for the County of Sacramento, to this Court based on federal question jurisdiction. (ECF No. 1.) Plaintiff did not object to Defendant's notice of removal or seek remand. However, even if no objection is made to removal, district courts have an independent obligation to examine whether federal jurisdiction exists. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990). The Court possesses federal question jurisdiction under 28 U.S.C. § 1331, based on Plaintiff's sixth cause of action for breach of implied contract of continued employment and seventh cause of action for breach of covenant of good faith and fair dealing, and supplemental jurisdictional over Plaintiff's remaining claims under 28 U.S.C. § 1367(a). *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 n.2 (9th Cir. 1996); *Chmiel v. Beverly Wilshere Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987). As discussed in this section, Plaintiff's sixth and seventh causes of action are preempted by Section 301 of the LMRA because the implied contract and covenant alleged to be breached require interpretation of the Collective Bargaining Agreement. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238–39 (9th Cir. 1990).

[8]     When a summary judgment motion is unopposed, a district court must "determine whether summary judgment is appropriate — that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Leramo, M.D. v. Premier Anesthesia Medical Group*, 2011 WL 2680837 at *8 (E.D. Cal. 2011) (quoting *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990)). A district court "cannot base the

of action are reviewed under the same legal framework and require identical discussion of facts and legal analysis. For these reasons, the Court discusses these causes of actions in tandem.

Section 301 of Labor Management Relations Act ("LMRA") provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . .", 29 U.S.C. § 185(a), and carries with it "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers*, 471 U.S. at 209 (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957)). As a result of this expansive mandate, the "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

When "[a] claim pleaded under state law" is determined to be preempted by § 301 of the LMRA because it "requires the interpretation of a collective bargaining agreement[, it] is transformed by § 301 of the LMRA into a claim arising under federal law." *Rissetto*, 94 F.3d at 599 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *Milne Employees*, 960 F.2d at 1408). "[T]he pre-emptive effect of § 301 . . . extend[s] beyond [the] suits alleging contract violations[ and] require[s] that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.'" *Allis-Chalmers*, 471 U.S. at 210–11 (quoting *Bowen v. United States Postal Serv.*, 459 U.S. 212, 224–225 (1983)). Accordingly, "questions relating to what the parties to [the collective bargaining] agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law." *Allis-Chalmers*, 471 U.S. at 211. To ensure uniform federal interpretation of a collective bargaining agreement ("CBA"), Section 301 "preempts state law claims that are based directly on

entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *Id.* (quoting *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004)). A court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.* (quoting *One Piece of Real Property*, 363 F.3d at 1101).

rights created by a collective bargaining agreement as well as claims that are substantially dependent on an interpretation of a collective bargaining agreement." *Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892, 894 (9th Cir. 1997) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)). It is not dispositive that a complaint is framed without reference to a CBA, and Section 301 does not preempt every claim "concerning employment, or tangentially involving a provision of a collective-bargaining agreement." *Allis-Chalmers Corp.*, 471 U.S. at 211.

Accordingly, the Ninth Circuit employs a two-step analysis to determine whether Section 301 preempts a state law claim. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the Court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Id.* (citing *Allis-Chalmers*, 471 U.S. at 212). "If, however, the right exists independently of the CBA," then the Court continues to step two of the analysis to consider "whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Id.* (citing *Caterpillar*, 482 U.S. at 394 (quoting *Int'l Brotherhood of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987))). "A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001), *as amended* (Aug. 27, 2001).

Here, Plaintiff alleges in his sixth cause of action that Plaintiff and Defendant "entered into an implied contract" that "[b]ased on oral representations and/or conduct of Defendant[] . . . Plaintiff . . . would be employed by Defendant[] so long as [Plaintiff's] performance was satisfactory, and that [D]efendant would not discharge [Plaintiff] without good and just cause." (ECF No. 1, Ex. A ¶¶ 46–47.) Relatedly, Plaintiff alleges in his seventh cause of action that "the [implied] employment agreement referred to [in his sixth cause of action] contained an implied covenant of good faith and fair dealing, which obligated Defendant[] to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would

prevent or impede Plaintiff from performing any or all of the conditions of the contract that he agreed to perform, or any at that would deprive Plaintiff of the benefits of the contract." (ECF No. 1, Ex. A ¶ 53.)

The implied covenant or contract claim is designed to protect the job security of employees who at common law could be fired at will. *Young*, 830 F.2d at 999. Unionized employees, however, experience no comparable lack of job security, whose employment relationship is governed by a collective bargaining agreement. *Id.* "[When t]he collective bargaining agreement guarantees the employer will [terminate] employees only upon just cause," as is the case here, "the agreement . . . provide[s] the same or greater protection of job security that state . . . law seeks to provide for nonunionized employees." *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1049 (9th Cir. 1987) (citations omitted). "The key to determining the scope of preemption is not how the complaint is cast, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement. A contrary result would frustrate the federal interest in uniform federal interpretation of collective agreements, allowing 'parties to evade the requirements of § 301 by relabeling their contract claims . . . .'" *Young*, 830 F.2d at 999 (quoting *Allis-Chalmers*, 471 U.S. at 211). "[A]s long as the state-law claim can be resolved without interpreting the [collective-bargaining] agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle*, 486 U.S. at 410.

Even though Plaintiff has framed his sixth and seventh causes of action as being based on an "oral[] . . . employment contract with Defendant[,]" (ECF No. 1, Ex. A ¶¶ 46–47), and in essence arguing such an implied contract is independent from the CBA, the Ninth Circuit has explained that when "[P]laintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted." *Cramer*, 255 F.3d at 691 (citing *Hechler*, 481 U.S. at 861–62). Plaintiff's claims for breach of implied contract and for breach of covenant are based on whether or not Defendant terminated Plaintiff's employment for good or just cause: "[Defendant] orally . . . assure[d] Plaintiff on various occasions that his work performance was of good or high quality, giving Plaintiff the reasonable belief that he would not be terminated arbitrarily [and] Plaintiff would not be discharged unless there was good cause to do so," (ECF No. 1, Ex. A ¶ 46);

24

and "Plaintiff . . . reasonably relied on Defendant['s] representations that . . . Defendant[] would not discharge him without good and just cause," (ECF No. 1, Ex. A ¶ 54). However, to determine the meaning of "good cause" and "just cause" in Plaintiff's employment termination requires interpretation of the CBA, which governs Plaintiff's employment with Defendant. "[A]ny independent agreement of employment concerning a job position covered by the CBA could be effective only as part of the collective bargaining agreement." *Beals*, 114 F.3d at 894 (citations omitted) (alterations omitted); *see also Young*, 830 F.2d at 997–98 (explaining that an alleged oral contract between employee and employer regarding employment reinstatement is controlled by CBA since employee held position covered by collective bargaining agreement); *Stallcop*, 820 F.2d at 1048 (finding that alleged oral agreement made by employer in connection with employee's employment reinstatement was only effective as part of the collective bargaining agreement). Therefore, "section 301 preempts the California state cause of action for breach of the implied covenant of good faith and fair dealing when an employee enjoys comparable job security under a collective bargaining agreement." *Milne Employees*, 960 F.2d at 1411 (citing *Cook*, 911 F.2d at 238–39); *see also Chmiel*, 873 F.2d at 1286; *Young*, 830 F.2d at 999).

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's breach of implied contract and breach of covenant claims.

### E. Eighth and Ninth Causes of Action: Infliction of Emotional Distress

#### i. *Cause of Action Eight: Intentional Infliction of Emotional Distress*

Defendant seeks summary judgment on Plaintiff's eighth[9] cause of action, which alleges that Defendant intentionally inflicted emotional distress upon Plaintiff when Defendant terminated Plaintiff's employment. Defendant argues, "[a]s a threshold matter, to the extent that [P]laintiff purports to bring a 'distinct cause of action' for intentional or negligent infliction of emotional distress . . . directed at the intentional, malicious aspects of [D]efendant's conduct such claims are barred by the exclusivity provisions of California workers' compensation law." (ECF

---

[9] Defendant states "Plaintiff's Seventh and Eighth Causes of Action are for, respectively, intentional and negligent infliction of emotional distress." (ECF No. 11 at 24:21–22.) However, Plaintiff's claim for intentional infliction of emotional distress is cause of action eight while his claim for negligent infliction of emotional distress is cause of action nine. (ECF No. 1, Ex. A ¶¶ 59–72.)

No. 11 at 24:23–25:3) (citation omitted).  Defendant alternatively argues, "[i]nsofar as [P]laintiff means instead to state a claim based on his '*Tameny*' and statutory claims, . . . [t]here is no evidence sufficient to sustain the essential elements [because P]laintiff cannot establish that his termination was in violation of either public policy or the FEHA."  (ECF No. 11 at 25:5–14) (citation omitted).

Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted) (internal quotations omitted).  Extreme and outrageous conduct must "exceed all bounds of that usually tolerated in a civilized community."  *Id.* at 1051 (citation omitted) (internal quotations omitted).  "Whether a defendant's conduct can reasonably be found to be [extreme and] outrageous is a question of law that must initially be determined by the court . . . ."  *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007) (citation omitted).

"A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."  *Janken v. GM Hughes Electrs.*, 46 Cal. App. 4th 55, 80 (1996).  "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."  *Id.*  Personnel management activities include, "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off . . . ."  *Id.* at 64–65.

Defendant argues for summary judgment on the grounds that there is "nothing on this record that would even suggest 'extreme or outrageous conduct' undertaken with the intent to inflict severe emotional injury against [P]laintiff" because "[P]laintiff admitted to conduct that violated store rules, company policy regarding alcohol sales, and state law.  That an employer

might discipline an employee who admittedly engages in such conduct hardly demonstrates either outrageousness or an intent to inflict emotional injury." (ECF No. 11 at 25:17–21) (emphasis omitted). Defendant further argues, "[P]laintiff testified only that he was 'depressed' and 'angry' and that he was worried about supporting his family, but that his anxiety went away when he started working again[, which] is neither 'substantial nor enduring' as a matter of law and thus insufficient to sustain [P]laintiff[']s claim of either intentional or negligent infliction of emotional distress." (ECF No. 11 at 25:22–26) (citations omitted).

As discussed above, *supra* Part III(D) and note 7, Plaintiff's opposition to Defendant's motion for summary judgment does not address this cause of action. However, Plaintiff alleges in his Complaint that "Defendant's unlawful retaliation and termination of Plaintiff[']s employment]" are "beyond all bounds of decency in a civilized society" and has caused Plaintiff "to suffer from extreme emotional distress, including but not limited to: mental anguish, outrage, frustration, severe anxiety about his family's financial security, fear of harm to his employability, anxiety about damage to his reputation, embarrassment among friends/family and colleagues, and the disruption of his personal life." (ECF No. 1, Ex. A ¶ 60.)

Plaintiff's allegations do not provide any facts that evince Defendant's conduct was outside employment and supervisory duties. Plaintiff's allegations are based on his termination from his employment, which is an activity that California courts have expressly found to constitute personnel management activity and is insufficient to sustain a claim of intentional infliction of emotional distress. *Janken*, 46 Cal. App. 4th at 64–65.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

ii.    *Cause of Action Nine: Negligent Infliction of Emotional Distress*

Finally, Defendant seeks summary judgment on Plaintiff's ninth[10] cause of action, which alleges that Defendant negligently inflicted emotional distress upon Plaintiff when Defendant

---

[10]    Defendant states "Plaintiff's Seventh and Eighth Causes of Action are for, respectively, intentional and negligent infliction of emotional distress." (ECF No. 11 at 24:21–22.) However, Plaintiff's claim for intentional infliction of emotional distress is cause of action eight while his claim for negligent infliction of emotional distress is cause of action nine. (ECF No. 1, Ex. A ¶¶ 59–72.)

terminated Plaintiff's employment.  Defendant argues, "[P]laintiff testified only that he was 'depressed' and 'angry' and that he was worried about supporting his family, but that his anxiety went away when he started working again[, which] is neither 'substantial nor enduring' as a matter of law and thus insufficient to sustain [P]laintiff's claim of either intentional or negligent infliction of emotional distress."  (ECF No. 11 at 25:22–26) (citations omitted).

"Negligent infliction of emotional distress, which is simply the tort of negligence, contains the traditional elements of duty, breach of duty, causation and damages." *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 107 (1992) (citing *Burgess v. Supr. Ct.*, 2 Cal. 4th 1064, 1072 (1992)).  The California Supreme Court has "made it clear that to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377 (2010) (citing *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 927–30 (1980)).  "[S]erious [emotional] distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the [emotional] stress engendered by the circumstances of the case." *Molien*, 27 Cal. 3d at 928 (citation omitted) (internal quotations omitted).

As discussed above, *supra* Part III(D) and note 7, Plaintiff's opposition to Defendant's motion for summary judgment does not address this cause of action.  However, Plaintiff alleges in his Complaint that "Defendant acted carelessly and recklessly, and breached a duty [owed] to Plaintiff, its employee, to exercise reasonable care and consideration in acknowledgement of Plaintiff's right to exercise his legal right not to engage in illegal business activity or conceal the same, and to duly report it to his supervisors[, and e]ach breach of duty resulted in economic and general harm to Plaintiff" which included "extreme emotional distress." (ECF No. 1, Ex. A ¶¶ 70–71.)  The Court disagrees.  There is no evidence that Defendant engaged in any conduct that would have subjected a reasonable man, normally constituted, to mental stress with which Plaintiff would be unable to adequately cope. *Molien*, 27 Cal. 3d at 928 (citation omitted).

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's negligent infliction of emotional distress claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 11) is GRANTED.

IT IS SO ORDERED.

Dated: March 27, 2018

Troy L. Nunley
United States District Judge